Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Angelica M. Ornelas (SBN 285929)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*aornelas@girardsharp.com*

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

YOUXIANG EILEEN WANG and DALTON
CHEN, on behalf of themselves and all others
similarly situated,

                    Plaintiffs,

        v.

LIFE INSURANCE COMPANY OF THE
SOUTHWEST and PREMIER FINANCIAL
ALLIANCE, INC.,

                    Defendants.

Case No. 4:19-cv-01150-YGR

**PLAINTIFFS' SUPPLEMENTAL
OPPOSITION TO DEFENDANT
PREMIER FINANCIAL ALLIANCE,
INC.'S MOTION TO COMPEL
ARBITRATION OR, IN THE
ALTERNATIVE, TO TRANSFER**

Date: August 20, 2019
Time: 2:00 p.m.
Place: Courtroom 1, 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-CV-01150-YGR

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................1

II.     ARGUMENT .............................................................................................................1

        A.      PFA Waived Arguments Raised for the First Time in Its Reply Brief. ...............1

        B.      Plaintiffs Did Not Check the "I Accept" Box Themselves, and None of PFA's
                Alternative Exceptions to Assent Applies. ...........................................................3

                1.      PFA's Recruiters Were Not Plaintiffs' Agents. ........................................3

                2.      Plaintiffs Did Not Ratify the AMA Through Their Conduct. ....................5

                3.      Plaintiffs Lacked Actual Notice and Inquiry Notice of the AMA, and They
                        Could Not Assent by Conduct. ..................................................................7

                4.      PFA Has Not Established the Requirements for Equitable Estoppel. ....................10

        C.      PFA Has Not Meaningfully Responded to Plaintiffs' Unconscionability Arguments.........12

        D.      PFA Still Fails to Present Any Basis for Transfer. .............................................14

III.    CONCLUSION.........................................................................................................15

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. Juniper Networks, Inc.*
115 Cal. App. 4th 638 (2004) ...................................................................................13

*Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*
106 F. Supp. 2d 606 (D.N.J. 1999) ..........................................................................7

*Brown v. Comcast Corp.*
2016 WL 9109112 (C.D. Cal. Aug. 12, 2016) .........................................................4

*Cisnero v. American General Financial Services, Inc.*
2012 WL 3025913 (N.D. Cal. July 24, 2012) .........................................................13

*City of Goleta v. Super. Ct.*
40 Cal. 4th 270 (2006)
*aff'd*, 726 F. App'x 562 (9th Cir. 2018)..................................................................10

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*
43 Cal. 4th 375 (2008) ..............................................................................................5

*Cobb v. Ironwood Country Club*
233 Cal. App. 4th 960 (2015) ..................................................................................13

*Comb v. PayPal, Inc.*
218 F. Supp. 2d 1165 (N.D. Cal. 2002)...................................................................12

*Desert Outdoor Advert. v. Superior Court*
196 Cal. App. 4th 866 (2011)....................................................................................9

*E & E Co. v. Light in the Box Ltd.*
2015 WL 5915432 (N.D. Cal. Oct. 9, 2015) .............................................................4

*Edwards v. Freeman*
34 Cal. 2d 589 (1949) ................................................................................................4

*Ferguson v. Countrywide Credit Indus., Inc.*
298 F.3d 778 (9th Cir. 2002) ...................................................................................12

*FT Travel—New York, LLC v. Your Travel Ctr., Inc.*
112 F. Supp. 3d 1063 (C.D. Cal. 2015)..................................................................2, 3

*Gallagher v. California Pac. Title & Tr. Co.*
13 Cal. App. 2d 482 (1936)........................................................................................6

*Great Am. Ins. Co. v. Wexler Ins. Agency, Inc.*
2000 WL 290380 (C.D. Cal. Feb. 18, 2000) .............................................................5

*Honig v. San Francisco Planning Dep't*
  127 Cal. App. 4th 520 (2005) ..................................................................................10

*Indep. Living Ctr. of S. Cal., Inc. v. Shewry*
  543 F.3d 1050 (9th Cir. 2008) ...............................................................................7, 8

*Ingalls v. Spotify USA, Inc.*
  2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ..........................................................13

*Inglewood Teachers Assn. v. Pub. Emp. Relations Bd.*
  227 Cal. App. 3d 767 (1991) ....................................................................................4

*Kairy v. Supershuttle Int'l, Inc.*
  2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) .........................................................11

*Knapp v. Sage Payment Sols., Inc.*
  2018 WL 659016 (N.D. Cal. Feb. 1, 2018) .................................................................7

*L. Byron Culver & Assocs. v. Jaoudi Indus. & Trading Corp.*
  1 Cal. App. 4th 300 (1992) ........................................................................................5

*LAOSD Asbestos Cases*
  28 Cal. App. 5th 862 (2018)
  *review denied* (Jan. 23, 2019) ..............................................................................5, 6

*Larson v. Speetjens*
  2006 WL 2567873 (N.D. Cal. Sept. 5, 2006) ........................................................10, 11

*Losapio v. Comcast Corporation*
  2011 WL 1497652 (N.D. Ga. Apr. 19, 2011) .............................................................10

*Lukovsky v. City & Cty. of San Francisco*
  535 F.3d 1044 (9th Cir. 2008) ..................................................................................10

*Menveg v. Fishbaugh*
  123 Cal. App. 460 (1932) .......................................................................................5, 6

*Mohammed v. Uber Techs., Inc.*
  237 F. Supp. 3d 719 (N.D. Ill. 2017) .........................................................................6

*Montoya v. Comcast Corporation*
  2016 WL 5340651 (E.D. Cal. Sept. 23, 2016) ...........................................................9

*Nguyen v. Barnes & Noble Inc.*
  763 F.3d 1171 (9th Cir. 2014) .................................................................................8, 9

*Ott v. Home Sav. & Loan Ass'n*
  265 F.2d 643 (9th Cir. 1958) ...................................................................................9

iii

*Register.com, Inc. v. Verio, Inc.*
    356 F.3d 393 (2d Cir. 2004) ....................................................................................9

*Roe v. SFBSC Mgmt., LLC*
    2015 WL 930683 (N.D. Cal. Mar. 2, 2015)
    *aff'd*, 656 F. App'x 828 (9th Cir. 2016)................................................................14

*S. Sacramento Drayage Co. v. Campbell Soup Co.*
    220 Cal. App. 2d 851 (1963) ..................................................................................5

*San Francisco Bay Area Rapid Transit Dist. v. Gen. Reins. Corp.*
    111 F. Supp. 3d 1055 (N.D. Cal. 2015) ................................................................10

*Siebert v. Amateur Athletic Union of U.S., Inc.*
    422 F. Supp. 2d 1033 (D. Minn. 2006) ..................................................................7

*Suh v. Superior Court*
    181 Cal. App. 4th 1504 (2010).......................................................................11, 13

*Tompkins v. 23andMe, Inc.*
    840 F.3d 1016 (9th Cir. 2016) ..............................................................................13

*Trane Co. v. Gilbert*
    267 Cal. App. 2d 720 (1968) ..................................................................................4

*van't Rood v. Cty. of Santa Clara*
    113 Cal. App. 4th 549 (2003)..............................................................................4, 7

*Young v. Horizon W., Inc.*
    220 Cal. App. 4th 1122 (2013)..............................................................................10

*Zamani v. Carnes*
    491 F.3d 990 (9th Cir. 2007) ..................................................................................2

**<u>Statutes</u>**

28 U.S.C. § 1404............................................................................................................14

Cal. Civ. Code § 2319 ....................................................................................................6

iv

## I.   __INTRODUCTION__

Just over three weeks before PFA moved to compel arbitration, Plaintiffs' counsel stated in court that no arbitration agreements were formed because PFA recruiters—not Plaintiffs—scrolled through the Associate Marketing Agreement ("AMA") and electronically signed it when Plaintiffs purchased their PFA memberships.  (5/6/19 CMC Tr. at 11.)  Despite knowing Plaintiffs would dispute contract formation on that basis, PFA supported its motion with only the declaration of its office manager who admittedly knows nothing about whether Plaintiffs saw or even knew of the AMA, or clicked "I accept."  (Opp. at 5-6.)  PFA now drops its unsupported argument that Plaintiffs actually assented and instead offers a menu of creative legal theories for why Plaintiff should be deemed to have assented.

Setting aside that PFA waived these arguments by failing to raise them in its opening brief, none has merit.  Plaintiffs did not grant their recruiters blanket authority to contract for them when they agreed to purchase memberships in PFA.  Even if there were agency relationships, they would be limited to that purchase.  PFA's other theories also fail, as PFA offers no evidence to contradict Plaintiffs' testimony that they did not know of the disputed arbitration provision when this litigation began.  PFA's assent-by-unspecified-conduct and equitable estoppel arguments ignore that it—not Plaintiffs—knew of this provision.  PFA also did not detrimentally rely on Plaintiffs' conduct, as is required for an estoppel.

PFA's reply also ignores that its arbitration clause is unenforceable because it attempted to contract by surprise and the clause purports to require Plaintiffs to arbitrate while allowing PFA to litigate with the threat of a $100,000 liquidated damage provision in court.  That disparity is fundamental, one-sided, and renders the clause unconscionable.  PFA's effort to brush aside the unconscionability issue should fool no one.  Finally, PFA offers no meaningful response to Plaintiffs' evidence demonstrating the strong connections between California, this case, and PFA's operations.

PFA's motion should be denied in all respects.

## II.   __ARGUMENT__

### A.   **PFA Waived Arguments Raised for the First Time in Its Reply Brief.**

Before PFA filed its motion, given Plaintiffs' counsel's statement at the case management

1

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

conference, it should have been clear that a declaration from PFA's office manager opining without personal knowledge that contracts had been formed thousands of miles away could not carry its burden. PFA makes the overly broad argument that "no defendant ever could prove formation" if it had to produce a witness who was there when the consumer clicked. (Reply at 2.)  But this case does not involve a consumer clicking a box in an online agreement on their own computer screen.  There is no dispute that the alleged formations instead arose when PFA recruiters scrolled through the AMA, clicked to accept, and entered Plaintiffs' names—meaning a declarant's conclusory statements that contracts were formed based on her expectation of how a user *might* interact with PFA's website cannot establish formation.  Rather than investigate Plaintiffs' in-court representation in order to present competent evidence (or perhaps because its investigation showed that such evidence did not exist), PFA submitted a placeholder motion in a strategic effort to "shift[] the burden" to Plaintiffs (Reply at 3), treating their opposition as an opening brief against which it can try out an assortment of new arguments on reply.

Given PFA's decision to rely on evidence it knew was incompetent to prove contract formation, the Court should find PFA's subsequent arguments are waived.  "Courts decline to consider arguments that are raised for the first time in reply." *FT Travel—New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (collecting cases); *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). PFA's motion relied solely on the declaration of Kelly Martin to argue that Plaintiffs agreed to arbitrate. (*See* Martin Decl. ¶¶ 25-26 (asserting that "Wang joined PFA and consented to the AMA on November 8, 2017" and that "Chen joined PFA and consented to the AMA on May 2, 2017.").)  Based on these assertions, PFA claimed that Plaintiffs were "presented with the full text of the AMA" when they joined PFA, "had to scroll through the entire AMA until they reached a check box at the end of the AMA," and accepted its terms and conditions.  (Mot. at 10.)  On reply, PFA drops these contentions.  The dates and overall process of Plaintiffs' alleged means of contracting, as stated in PFA's motion, are absent from its reply, replaced by a *mélange* of new arguments.

PFA argues that, despite abandoning its motion arguments and evidence, it nevertheless met its burden of establishing the existence of a valid agreement to arbitrate by a preponderance of the evidence,

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

thereby shifting the burden to Plaintiffs to rebut the abandoned arguments and evidence.  (Mot. at 2-3.)
PFA then argues that Plaintiffs "alternatively" authorized their uplines to contract for them, retroactively
ratified agreements they testified they did not know about, had "inquiry" notice and are estopped from
contesting the existence of an agreement they never signed and do not sue under.

There is no excuse for PFA's failure to present its new arguments in its motion.  The Court should
not reach these issues, as PFA waived the ability to raise them.  *FT Travel*, 112 F. Supp. 3d at 1079.[1]

### B. Plaintiffs Did Not Check the "I Accept" Box Themselves, and None of PFA's Alternative Exceptions to Assent Applies.

PFA maintains that its sales associates are not PFA's agents (Reply at 10-11), even as the AMA
"authoriz[es them] to solicit recruits on behalf of PFA."  (Martin Decl. Ex. A, ¶ 4.)  Instead PFA argues
that its recruiters are agents of the individuals to whom they sell memberships, with unfettered authority to
enter into contracts with PFA on behalf of recruits like Plaintiffs.  PFA's argument has no basis in law and
should be rejected.

### 1. PFA's Recruiters Were Not Plaintiffs' Agents.

Each Plaintiff agreed to purchase a PFA membership from a PFA associate selling memberships on
*PFA*'s behalf.  (Dkt. No. 64-3, Wang Decl. ¶¶ 3, 6; Dkt. No. 64-4, Chen Decl. ¶¶ 4, 8.)  In offering PFA
memberships, the recruiters were acting as sales agents of PFA, not Plaintiffs.  PFA argues that its sales
associates acted at Plaintiffs' "express direction" and signed the AMA "with their permission."  (Reply at
1, 4.)  But PFA's argument is unsupported by any evidence that Plaintiffs gave these associates authority
to contract on their behalf.

To complete the transactions, Plaintiffs gave their payment information to the recruiting PFA
associate.  (Dkt. No. 64-3, Wang Decl. ¶ 6; Dkt. 64-4, Chen Decl. ¶ 6.)  The mere act of handing over their
credit card to become a member did not create a broad agency relationship, any more than handing a credit
card over to a store clerk to purchase a pair of shoes creates an agency relationship.  *See, e.g.*, *E & E Co. v.*

---

[1] Plaintiffs reserve the right to move to strike PFA's supplemental reply to the extent it improperly raises
further new arguments in response to this supplemental opposition.

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

*Light in the Box Ltd.*, No. 15-CV-00069-EMC, 2015 WL 5915432, at *6 (N.D. Cal. Oct. 9, 2015) (denying motion to compel arbitration and explaining that an agent does not automatically have the authority to agree to any and all obligations "accruing from that transaction").

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control." *van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549, 571 (2003) (internal quotation marks omitted) (quoting *Edwards v. Freeman*, 34 Cal. 2d 589 (1949)). PFA has the burden of proving the existence and scope of an agency relationship. *See Inglewood Teachers Assn. v. Pub. Emp. Relations Bd.*, 227 Cal. App. 3d 767, 780 (1991). It has not met that burden here.

No evidence demonstrates any manifestation of consent by Plaintiffs to anything but the exchange of $125 for a PFA membership. From Plaintiffs' standpoint, the recruiters were there to sign them up, not to agree to other contractual terms. Nor is there any evidence of Plaintiffs' uplines agreeing to submit to Plaintiffs' control. "In the absence of the essential characteristic of the right of control, there is no true agency." *van't Rood*, 113 Cal. App. 4th at 572 (quoting *Edwards,* 34 Cal. 2d at 592); *see also Brown v. Comcast Corp.*, No. EDCV 16-00264 AB (SPx), 2016 WL 9109112, at *4 (C.D. Cal. Aug. 12, 2016) ("Plaintiff did not have control over the alleged agency relationship because he was unaware of its existence.").

Moreover, "[a] principal cannot be held when an actual agent acts beyond the scope of his actual or ostensible authority." *van't Rood*, 113 Cal. App. 4th at 573 (citations omitted). In this case, even if the evidence established an agency relationship (and it does not), the scope of such agency would be limited to processing Plaintiffs' membership purchases, as that was the express and only purpose for their providing their personal and payment information to the recruiters. (Dkt. No. 64-3, Wang Decl. ¶¶ 5-6; Dkt. No. 64-4, Chen Decl. ¶¶ 6, 8.)

The relationships between the parties and the circumstances of their interaction bear on the scope of agency. *See Trane Co. v. Gilbert*, 267 Cal. App. 2d 720, 726 (1968). Plaintiffs had no relationship with

4

their recruiters and barely knew them.  (Supplemental Declaration of Daniel C. Girard in Opposition to Motion to Compel Arbitration or, in the Alternative, to Transfer ("Suppl. Girard Decl."), Ex. A (Deposition of Youxiang Eileen Wang ("Wang Tr.")) at 11:20-24, Ex. B (Deposition of Dalton Chen ("Chen Tr.")) at 31:14-16.)  It would be unreasonable for any party involved to think Plaintiffs granted a near-stranger blanket authority to enter into contracts without further approval, rather than discussing such approval or contracts first, particularly with Plaintiffs seated just a few feet away during the enrollment process. (Suppl. Girard Decl. Ex. A (Wang Tr.) at 36:22-37:18, Ex. B (Chen Tr.) at 66:10-67:1.)  *See S. Sacramento Drayage Co. v. Campbell Soup Co.*, 220 Cal. App. 2d 851, 857 (1963) (principal must engender the belief that the agent could enter into the type of agreement at issue; to hold otherwise would give an agent "not the authority, but the naked power to bind his principal to any contract within the general scope of his duties, however fantastic or detrimental to the principal's interest such contract might be.").

In addition, an agency relationship is one "in which fiduciary duties are imposed by law."  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008).  "A fiduciary relationship imposes duties of full disclosure and loyalty," including a duty "to disclose all information . . . relevant to the subject matter of the agency."  *Great Am. Ins. Co. v. Wexler Ins. Agency, Inc.*, No. CV97-9397 MMM (BQRx), 2000 WL 290380, at *13 (C.D. Cal. Feb. 18, 2000) (quoting *L. Byron Culver & Assocs. v. Jaoudi Indus. & Trading Corp.*, 1 Cal. App. 4th 300, 302 (1992)).  Yet the PFA recruiters who were supposedly Plaintiffs' agents did not tell them anything about the AMA or the fact that they were entering into a contract on their behalf.  Their conduct confirms that these recruiters were not agents of Plaintiffs.

### 2.    Plaintiffs Did Not Ratify the AMA Through Their Conduct.

PFA next argues in the alternative that, even if Plaintiffs never granted PFA's recruiters broad authority to contract on their behalf, Plaintiffs "subsequently approved of and ratified that authority upon receiving compensation for their insurance sales made as PFA Associates."  (Reply at 4.)  That is incorrect: "[R]atification to be binding must have been made with full knowledge of all the material facts."  *Menveg v. Fishbaugh*, 123 Cal. App. 460, 464 (1932) (citations omitted); *see also LAOSD Asbestos Cases*, 28 Cal. App. 5th 862, 884 (2018), *review denied* (Jan. 23, 2019) ("[R]atification through the acceptance of benefits

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

1   requires knowledge of the relevant circumstances.") (citations omitted).

2   PFA's ratification argument fails because the undisputed evidence shows that Plaintiffs did not

3   have knowledge, much less full knowledge, that the PFA recruiters were purporting to enter into contracts

4   on their behalf.  (Dkt. No. 64-3, Wang Decl. ¶¶ 3-7; Suppl. Girard Decl. Ex. A (Wang Tr.) at 34:16-37:18;

5   Dkt. No. 64-4, Chen Decl. ¶¶ 4-9; Suppl. Girard Decl. Ex. B (Chen Tr.) at 58:11-62:15, 65:17-69:19,

6   93:16-94:1.)  Plaintiffs testified that they were unaware of the existence and terms of PFA's arbitration

7   clause until after this litigation began.  (Suppl. Girard Decl. Ex. A (Wang Tr.) at 46:9-47:4, Ex. B (Chen

8   Tr.) at 88:22-89:2, 106:17-21.)  Not until PFA moved to compel arbitration was it ever suggested that the

9   AMA had been executed on their behalf.  (Suppl. Girard Decl. Ex. A (Wang Tr.) at 46:17-47:4, Ex. B

10  (Chen Tr.) at 94:2-4.)  Plaintiffs could not ratify the acts of PFA's recruiters without actual knowledge of

11  all material terms.  *Menveg*, 123 Cal. App. at 464 (1932); *LAOSD*, 28 Cal. App. 5th at 884.  What is more,

12  lack of diligence in investigating does not establish ratification.  *Gallagher v. California Pac. Title & Tr.*

    *Co.*, 13 Cal. App. 2d 482, 493-94 (1936).

13  PFA's argument that its recruiters assented to the AMA for Plaintiffs implicitly concedes that

14  Plaintiffs lacked knowledge of the AMA and the arbitration clause.  (Reply at 4-5.)  If knowledge of the

15  AMA's terms must be imputed to Plaintiffs through an agent, then logically Plaintiffs themselves did not

16  have that knowledge.  *Cf. Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 733 (N.D. Ill. 2017)

17  (plaintiff did not ratify arbitration agreement when he was unaware of it and the defendant's agent or

18  employee had purportedly entered it on his behalf).

19  Asserting novel propositions of law in parentheses, PFA argues that "[w]here an actual agency

20  relationship is created (*or ratified*), an agent 'will normally have the authority to do everything necessary

21  or proper and usual in the ordinary course of business for effecting the purpose of his agency."  (Reply at 4

22  (emphasis added) (quoting Cal. Civ. Code § 2319).)  But wide-ranging "[a]gency relationship[s]" are not

23  ratified—only agency to enter into specific contracts can be ratified, because a principal must have full

24  knowledge to ratify them.  *See Gallagher*, 13 Cal. App. 2d at 493-94.  And it is misleading for PFA to cite

25  section 2319 to support its ratification argument, as that statute has *nothing to do with ratification*.  Nor

26

27

28

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

1  does the case law PFA cites in the ratification section of its reply involve ratification.[2]

2         **3.**    **Plaintiffs Lacked Actual Notice and Inquiry Notice of the AMA, and They Could Not Assent by Conduct.**

3

4         PFA's next alternative argument is that "each Plaintiff had at least inquiry notice of the AMA's

5  terms when they began to sponsor downlines Associates," and that this asserted inquiry notice of the terms

6  to which PFA sought to bind other associates weeks, months, or years after Plaintiffs purchased their own

7  memberships can bind Plaintiffs even after their alleged contracts were executed.  (Reply at 6.)  PFA fails

8  to cite any authority suggesting that a consumer may be put on inquiry notice after an agreement was

9  allegedly formed.  Notably, too, although its heading claims Plaintiffs "[a]ssented [t]hrough [t]heir

10  [c]onduct," PFA conspicuously fails to specify *what conduct substitutes for actual assent*.  This omission

11  alone is fatal.[3]

12         Ms. Wang testified that she saw what appeared to be the AMA page when she was being trained by

13  her upline to register new recruits.  (Wang Tr at 41:16-42:13.)  Her upline immediately scrolled through

14  the page, however, and Ms. Wang adopted that same practice when signing new associates.  (*See id.* at

15  42:8-10 ("And then that's the second page, and she scroll down fast, and put the, I remember, 'I Agree.'"),

16  41:2-42:1 ("So, I went to, went with her and, you know, I stayed next to her, and see how she did it.  So, I

17  just did exactly what she did.").)  Ms. Wang was not the enrollee in any subsequent enrollment process,

18  and PFA offers no evidentiary grounds for why she would reasonably think that the terms she was later

19  taught to scroll through related to her own earlier membership purchase.

20         Mr. Chen did not know that the AMA existed until after this litigation began.  While he saw the

21  first page of PFA's registration website when he copied its URL to send to his downlines, the AMA would

22

23  [2] *See Knapp v. Sage Payment Sols., Inc.*, No. 17-CV-03591-MMC, 2018 WL 659016, at *2 (N.D. Cal. Feb. 1, 2018) (quoted passage from section labeled "Classical Agency"; section labeled "Ratification" is present but not cited by PFA); *van't Rood*, 113 Cal. App. 4th at 573 (similar); *Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 617 (D.N.J. 1999) (cited page is section labeled "Actual Authority"); *Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1045 (D. Minn. 2006) (case has nothing to do with ratification and the plaintiffs "ultimately received" email notice).

24

25

26  [3] *See Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1065 n.17 (9th Cir. 2008) (court will not make arguments for a party and a party waives any argument that is not sufficiently articulated).

27

28  PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

1   only be visible upon filling out the multiple data fields on the first page and submitting them—actions that

2   Mr. Chen left to his downlines.  (Suppl. Girard Decl. Ex. B (Chen Tr.) at 78:12-79:1, 105:17-22.)  When

3   Mr. Chen enrolled new downlines in person, he would "only verify the last page on the credit card

4   information. . . ."  (*Id.* at 102:23-25.)  Without disputing these facts, PFA invites this Court to ignore them

5   and instead "*presume* that Mr. Chen became aware of the AMA (or should have) during the enrollment

6   process for his downline Associates, just as Ms. Wang did."  (Reply at 7 (emphasis added).)  PFA offers no

7   legal support for such a presumption.  Nor could this presumption have any factual support, considering

8   that both Plaintiffs testified to different procedures for enrolling new downlines (neither of which entailed

9   notifying the downlines of the AMA).[4]  Further, the presumption PFA invites is inconsistent with its own

10  argument: even as PFA now asks the Court to presume Mr. Chen, instead of his new downlines, completed

11  the registration process for them, PFA maintains it is "unrebutted" that "all Associates must scroll through

12  and affirmatively accept the terms of the AMA."  (Reply at 2-3.)

13          Instead of setting out a reasoned basis for presuming inquiry notice,[5] PFA quotes a passage from

14  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), concerning the effect of actual—not

15  inquiry—notice on contract formation through a browsewrap agreement.[6]  (Reply at 6.)  Nothing in

16  *Nguyen* suggests that there can be inquiry notice of a contract without terms providing for assent by

17  conduct or inaction, or that a contract can be formed when a third party who never assented receives

18  notice of terms weeks or months after the agreement was purportedly reached.

19

---

20  [4] Mr. Chen testified in detail about the process by which he enrolled new downlines in the PFA pyramid.
    (*See* Suppl. Girard Decl. Ex. B (Chen Tr.) at 77:2-80:24, 99:14-103:7.)  Instead of addressing these and

21  other aspects of his testimony, PFA asks the Court to draw a negative inference based upon Plaintiffs'
    counsel's instructions to Mr. Chen not to answer questions extending beyond the scope of discovery

22  approved by the Court, including questions about after-the-fact activities that were not raised, even by

23  implication, in PFA's motion.  *See* Dkt. No. 70 (limiting the depositions "to the topics relating to the
    motion to compel arbitration or plaintiffs' opposition thereto covered in their respective declarations").

24  [5] *See Indep. Living Ctr.*, 543 F.3d at 1065 n.17.

25  [6] PFA mischaracterizes Ninth Circuit's opinion, stating that "the Court held that . . . arbitration may still be
    compelled if the plaintiff had inquiry notice of the requirement while still doing business with the

26  defendant."  (Reply at 6 (citing *Nguyen*, 763 F.3d at 1176-77).)  In fact, the court was considering the
    matter of consent to a website's terms of use by affirmatively expressing assent or by *using the website*.

27  The court said nothing about entering into a binding agreement through "doing business."  *See id.*

28  PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
    THE ALTERNATIVE, TO TRANSFER
    Case No. 4:19-cv-01150-YGR

*Nguyen* does not rescue PFA's inquiry-notice argument.  In *Nguyen* the terms and conditions at issue explicitly stated, "By visiting any area in the Barnes & Noble.com Site, creating an account, [or] making a purchase via the Barnes & Noble.com Site . . . a User is deemed to have accepted the Terms of Use." *Id.* at 1174 (alterations in original).  Those terms were available only by clicking on a hyperlink, and it was not necessary to affirmatively assent to the terms in order to use the website.  *Id.*  The court concluded that no agreement had been formed, though it held out the possibility that an agreement might have been formed had the record shown "actual notice" (which is absent here) or had the user been required to "affirmatively acknowledge" the terms and proceeded to use the website.  *Id.* at 1176.

By its own terms, the AMA requires affirmative consent—a click and electronic signature—not by using PFA's website or any other conduct.  (Martin Decl., Ex. 1.)  Moreover, the AMA was (or should have been) offered to a person buying a PFA membership, not to an existing PFA associate, and an offer may only be accepted by the party to whom it is directed.  *Ott v. Home Sav. & Loan Ass'n*, 265 F.2d 643, 646 (9th Cir. 1958).  There is no evidence that Plaintiffs had reason to know that the sign-up process they used for recruiting new associates was the same as the process that applied to their own act of signing up.

Nor do PFA's other cases help its argument.  PFA cites *Desert Outdoor Advert. v. Superior Court*, 196 Cal. App. 4th 866, 872 (2011), for the proposition that "Ms. Wang had actual notice of the AMA." (Reply at 7.)  But *Desert Outdoor* discusses the consequence of "a party's failure to read a contract, or to carefully read a contract, before signing it," as opposed to failure to read a contract the party never signed, as here.  *Register.com, Inc. v. Verio, Inc.* did not concern arbitration but rather a defendant in a breach of contract suit who submitted multiple queries every day to the plaintiff's website and each time saw terms and conditions specifying that the terms could be accepted through the submission of a query.  356 F.3d 393, 397 (2d Cir. 2004).  The defendant specifically "admitted . . . it was fully aware of the terms on which [plaintiff] offered the access" to the query tool.  *Id.* at 402.  In *Montoya v. Comcast Corporation*, the plaintiff did not dispute that Comcast had sent her a "Welcome Kit" with the arbitration provision, which stated that the cable services would be provided "to you . . . on the terms and conditions set forth in this Agreement. . . ."  No. 2:15-CV-02573-TLN-DB, 2016 WL 5340651, at *6 (E.D. Cal. Sept. 23, 2016).  It

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

1   was likewise undisputed that the plaintiff in *Losapio v. Comcast Corporation* received an agreement in a

2   Comcast bill that she subsequently paid; the agreement stated that "you will have accepted this Agreement

3   and be bound by its terms if you use the Services. . . ." No. 1:10-CV-3438-RWS, 2011 WL 1497652, at *1

4   (N.D. Ga. Apr. 19, 2011).  Neither Plaintiff here received that kind of notice.

5   **4.    PFA Has Not Established the Requirements for Equitable Estoppel.**

6   PFA's appeal to equitable estoppel as a means of binding Plaintiffs is equally far-fetched.  "The

7   doctrine of equitable estoppel, also known as promissory estoppel, 'is founded on concepts of equity and

8   fair dealing.  It provides that a person may not deny the existence of a state of facts if he intentionally led

9   another to believe a particular circumstance to be true and to rely upon such belief to his detriment.'" *San*

10  *Francisco Bay Area Rapid Transit Dist. v. Gen. Reins. Corp.*, 111 F. Supp. 3d 1055, 1070 (N.D. Cal. 2015)

11  (quoting *City of Goleta v. Super. Ct.*, 40 Cal. 4th 270, 279 (2006)), *aff'd*, 726 F. App'x 562 (9th Cir. 2018).

12  PFA avoids the elements of this doctrine, but "[u]nder California law, equitable estoppel requires

13  that: '(1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her

14  conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so

15  intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party

16  asserting the estoppel must reasonably rely on the conduct to his or her injury.'" *Lukovsky v. City & Cty.*

17  *of San Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (quoting *Honig v. San Francisco Planning*

18  *Dep't*, 127 Cal. App. 4th 520, 529 (2005)).

19  PFA does not even try to satisfy these elements.  PFA has not identified any set of facts known to

20  Plaintiffs but not to it; nor has PFA showed any successful efforts by Plaintiffs to induce it to incur injury

21  by relying on any misrepresentations.  To the contrary, it is Plaintiffs who claim injury as a result of

22  becoming PFA associates.  *See Young v. Horizon W., Inc.*, 220 Cal. App. 4th 1122, 1131 (2013) ("There can

23  be no estoppel if one of these elements is missing.") (citation omitted).

24  The case PFA relies upon, *Larson v. Speetjens*, underscores that no estoppel applies in this

25

26

27

28

10

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

1    situation.[7] That court observed that, "[i]n the arbitration context, the doctrine recognizes that a party may

2    be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the

3    contract when he has consistently maintained that other provisions of the same contract should be

4    enforced *to benefit him*."  No. C05-3176 SBA, 2006 WL 2567873, at *4 (N.D. Cal. Sept. 5, 2006)

5    (emphasis added) (internal quotation marks and citation omitted).

6         Plaintiffs have never claimed a benefit from the AMA.  They did not even know about it, and they

7    claim *injury* from PFA's conduct.  (Dkt. No. 64-3, Wang Decl. ¶¶ 3-7; Suppl. Girard Decl. Ex. A (Wang

8    Tr.) at 46:9-47:4; Dkt. No. 64-4, Chen Decl. ¶¶ 4-9; Suppl. Girard Decl. Ex. B (Chen Tr.) at 88:22-89:2,

9    94:10-14, 106:17-21.)  To the extent Plaintiffs understood their commissions as flowing from a PFA

10   promise, it was not anything in the AMA but, rather, PFA's representations to them about the income they

11   would receive.  (Suppl. Girard Decl. Ex. A (Wang Tr.) at 31:4-23, 33:16-19, 33:22-34:15, Ex. B (Chen Tr.)

12   at 91:11-92:4.)  PFA's argument that Plaintiffs benefited from sales commissions overlooks their injury

13   allegations in this litigation and is insufficient in any case to invoke estoppel.

14        *Larson*'s application of the doctrine's elements underscores that they are not met here: the non-

15   signing party, by enforcing specific provisions of a contract, intentionally induces the signing party to

16   believe that a contract has been formed before denying its existence at a later time.  *See* 2006 WL

17   2567873, at *4-7.  PFA seeks to bypass this necessary showing, contending only that "Plaintiffs gained at

18   least two significant benefits upon becoming PFA Associates"—namely "the right to earn commissions"

19   on their own sales and on the sales of their downlines.  (Reply at 8.)  Yet, merely "receiving benefits" is

20   different from "consistently maintain[ing] that other provisions of the same contract should be enforced"

21   while knowing that a contract had never been formed, thereby inducing reliance.  *Larson*, 2006 WL

22   2567873, at *4.  PFA's estoppel argument cannot stand.

---

[7] The other cases PFA cites are also inapposite.  In *Kairy v. Supershuttle Int'l, Inc.*, the court found that "the nonsignatories *knowingly exploited* the rights and privileges granted under the agreements."  No. C 08-02993 JSW, 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012) (emphasis added).  The language that PFA attributes to the court in *Suh v. Superior Court* is not actually the court's holding, but, rather, a parenthetical gloss on another case.  181 Cal. App. 4th 1504, 1513 (2010).  In any event, the court concluded that plaintiffs—who were third-party beneficiaries and not alleged parties to the contract—were *not* required to arbitrate.  *Id.* at 1514.

11

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR

1

### C.    PFA Has Not Meaningfully Responded to Plaintiffs' Unconscionability Arguments.

2       Far from being a "fallback" (Reply at 8), the facially unconscionable nature of PFA's arbitration

3   provision provides a separate and independent ground to deny its motion.  *See, e.g.*, *Ferguson v.*

4   *Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (affirming denial of arbitration motion

5   where district court "ruled that, assuming the agreement" existed, it was unconscionable); *Comb v.*

6   *PayPal, Inc.*, 218 F. Supp. 2d 1165, 1172, 1177 (N.D. Cal. 2002) ("assum[ing] without deciding" that

7   agreements were formed and denying motion to compel arbitration on unconscionability grounds).

8       PFA fails to respond to Plaintiffs' arguments on procedural unconscionability—including that an

9   adhesive contract contains indicia of procedural unconscionability and Plaintiffs were *surprised* by PFA's

10  invocation of arbitration (Opp. at 12-13)—trying instead to discredit Plaintiffs by misrepresenting the

11  record.  For example, PFA challenges Plaintiffs' reference to Ms. Wang and Mr. Chen as "unsophisticated

12  parties" (Reply at 9), but PFA quotes their opposition out of context—that brief noted that "Plaintiffs are

13  relatively unsophisticated parties" by comparison to a "corporation that has sold insurance policies bearing

14  over $1.3 billion in face value." (Opp. at 12.)  PFA also asserts that the AMA "is six pages long and the

15  arbitration provision appears on page two," suggesting that the AMA is presented to users in discrete,

16  page-sized portions, each of which a user sees for at least as long as it takes to click and wait for the next

17  page to load.  (Reply at 9.)  That is not true; the AMA is presented as one long web page.  (Martin Decl. ¶

18  6 (citing Ex. A, p. 2).)  PFA does not deny that the arbitration provision is buried in the middle of a

19  lengthy paragraph labeled only "Covenants of the Associate" (Opp. at 13), and there is in fact evidence

20  that registration for both Plaintiffs proceeded rapidly.  (*Compare* Reply at 9:6, *with* Wang Decl. ¶ 5, *and*

21  Suppl. Girard Decl. Ex. A (Wang Tr. at 37:13-14), Ex. B (Chen Tr.) at 61:9-62:15.)  PFA further accuses

22  Plaintiffs of "willful incuriosity," arguing that they do not claim "they could not have read the AMA or

23  asked more questions" when they bought memberships.  (Reply at 5, 9.)  But it is undisputed that Plaintiffs

24  did not know of the AMA's existence at that time, and it was not their obligation to anticipate or ask about

25  a contractual offer they were unaware of.

26      PFA advances no coherent argument regarding substantive unconscionability, evidently

27

28

recognizing that it is harsh and one-sided to require associates to arbitrate their claims while allowing PFA to litigate in court and recover a guaranteed $100,000 in liquidated damages for any breach. *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004) ("When only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality.").

Instead of defending its nonmutual agreement, PFA suggests that *perfect* mutuality is not required and vaguely suggests that the Court should sever any unconscionable provisions. (Reply at 10.) But as the cases PFA cites in its reply confirm, legitimate business needs must justify any exception to the mutuality requirement. *See, e.g.*, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016). PFA presents no business justification for why it must impose an arbitration provision that is perfectly *non*mutual. Even more tellingly, PFA fails to address not only *Abramson* but also *Cisnero v. American General Financial Services, Inc.*, cited by Plaintiffs, where a court in this District rejected a similar argument that an arbitration agreement "need not be perfectly mutual" because, as here, the defendant did not articulate a legitimate need for its blatantly one-sided provision. No. C 11-02869 CRB, 2012 WL 3025913, at *7 (N.D. Cal. July 24, 2012); *see also Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 968 (2015) (affirming denial of arbitration motion and stating in dicta that indicia of substantive unconscionability were present because the defendant's "fervent commitment to the arbitration of any claims its members might choose to file against it, stands in marked contrast to its apparent unwillingness to commit *its own claims* to the same system.").

As to severability, PFA does not say what provisions it thinks could or should be severed, and Plaintiffs challenge the only terms PFA seeks to enforce. Moreover, PFA's own authority makes clear that courts disfavor severance of harshly one-sided provisions. *See Suh v. Superior Court*, 181 Cal. App. 4th 1504, 1517 (2010) ("Otherwise, parties will be encouraged to insert such clauses, with the only sanction being the removal of the clause."); *see also, e.g.*, *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *6 (N.D. Cal. Nov. 14, 2016) ("Saving an arbitration clause by severing each individual problematic provision would allow a company to draft a one-sided agreement and then whittle down to the

13

1   least-offensive agreement when faced with litigation, rather than drafting fair agreements in the first

2   instance."); *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2015 WL 930683, at *12 (N.D. Cal. Mar.

3   2, 2015) ("The court instead holds the entire arbitration agreement unenforceable."), *aff'd*, 656 F. App'x

4   828 (9th Cir. 2016).

5       **D.      PFA Still Fails to Present Any Basis for Transfer.**

6           Transfer remains inappropriate under 28 U.S.C. § 1404 for the reasons set forth at pages 14

7   through 24 of Plaintiffs' opposition brief.  (Opp. at 14-24.)  Plaintiffs respond only to correct two of PFA's

8   misleading statements concerning the extent of its connections to California.

9           In opposition, Plaintiffs pointed out that "56% of all PFA associates are in California."  (*Id.* at 16-

10  17.)  For support, Plaintiffs cited verified interrogatory responses from Life Insurance Company of the

11  Southwest stating that, as of June 24, 2019, there were "2184 active insurance producers affiliated with

12  PFA who were appointed with LSW in California" out of 3916 total in the United States—56%.  (Girard

13  Decl. Ex. 5 at 3.)  PFA now claims that the correct figure is 46% and attributes the difference to a "math

14  error" by Plaintiffs.  (Reply at 10.)  There is no error.  PFA does not cite the same source relied on by

15  Plaintiffs.  It cites deposition testimony from its own corporate representative, Ms. Martin, estimating the

16  number of PFA members, including office staff, at any time and conveying a similar estimate of the subset

17  of agents in California that PFA's counsel Mr. Jacobson had provided to her.  (Girard Decl. Ex. 4 at 68.)

18          In other words, Plaintiffs relied on admissible evidence, provided in verified interrogatory

19  responses, which Plaintiffs served after PFA informed Plaintiffs that its "database of Associates does not

20  have the ability to generate a report of which Associates reside in a particular state."  (Def.'s Objs. and

21  Resps. to Pltfs.' 2d Reqs. for Prod. at 6.)  PFA contests the validity of Plaintiffs' calculation based on its

22  office manager's rough estimate and another number she heard from PFA's attorney.  Plaintiffs did not

23  make "a math error."

24          Second, PFA disputes Plaintiffs' evidence that "that 'PFA regularly holds recruiting and training

25  events in California.'"  (Reply at 10 (quoting Opp. at 4).)  While nearly every event in the record is

26  branded with PFA's logo or "Premier Financial Alliance," PFA insists that "nearly all of the events cited

27  by Plaintiffs were organized by and advertised . . . not by PFA itself."  *Id.*  PFA then cites paragraphs 17-

28

14

23 of the Girard Declaration, which describe advertisements posted to social media under accounts like "PFA JW Success" (Girard Decl. Exs. 12, 16, 17, 18), "Rex Wu, PFA" (*Id*. Ex. 13), and "PFA Team Legacy" (*Id.* Ex. 15)—all of which PFA claims, contrary to the announcements, were "not . . . PFA itself." (Reply at 10.)  PFA ignores the adjacent Exhibits 11 (the "Brought to You by Premier Financial Alliance" Eventbrite page advertising 70% of its events in California) and 19 (a PFA press release announcing that "Premier Financial Alliance is excited to announce" a San Diego event with "1,700+ attendees").  PFA also avoids mention of Exhibits 21 and 28, which are Facebook postings by "Premier Financial Alliance, Inc." promoting California events attended by PFA's CEO.  All told, of the 24 California-based events reflected in Plaintiffs' evidence, PFA does not dispute that ten were marketed on the internet by PFA itself. Whether the remaining 58% amount to "nearly all," and whether the activity of the "PFA JW Success" account—operated under a policy requiring PFA to scour the internet monthly for unauthorized postings (Girard Decl. Ex. 10)—may be attributed to PFA for venue purposes are questions for the Court.

## III.   <u>CONCLUSION</u>

PFA has not demonstrated a valid agreement to arbitrate or basis for transfer.  The Court should, therefore, deny PFA's motion in its entirety.

Dated: July 26, 2019

Respectfully submitted,

**GIRARD SHARP LLP**

/s/ *Daniel C. Girard*

Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam Polk (SBN 273000)
Angelica M. Ornelas (SBN 285929)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800

*Counsel for Plaintiffs*

15

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on July 26, 2019, I electronically filed the foregoing Supplemental

3

Opposition using the CM/ECF system, which will send notification of such filing to all counsel of

4

record registered in the CM/ECF system.

5

6

                                    /s/ *Daniel C. Girard*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL ARBITRATION OR, IN
THE ALTERNATIVE, TO TRANSFER
Case No. 4:19-cv-01150-YGR