**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **YOUXIANG EILEEN WANG, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**LIFE INSURANCE COMPANY OF THE SOUTHWEST, ET AL.,**<br><br>Defendants. | CASE NO. 19-cv-01150-YGR<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE TO TRANSFER ACTION PURSUANT TO SECTION 1404(A); SETTING CASE MANAGEMENT CONFERENCE**<br><br>Dkt. No. 55 |

Plaintiffs Youxiang Eileen Wang and Dalton Chen bring the action herein on behalf of themselves and a proposed class alleging claims for: fraud; conspiracy; endless chain scheme in violation of California Penal Code section 327 and Civil Code section 1689.2; violation of California's Unfair Competition Law, Business & Professions Code section 17200; and violation of New Jersey Consumer Fraud Act, Statutes Ann. 56:8-3 *et seq*. Plaintiffs filed their First Amended Complaint on April 30, 2019. (Dkt. No. 43.)

Defendants Premier Financial Alliance, Inc. ("PFA"), David Carroll, Jack Wu, Lan Zhang, Bill Hong, Rex Wu, AJW Production, LLC, and The Consortium Group, LLC, move to compel arbitration of all claims against PFA or, in the alternative, to transfer the action to the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 55.) Defendants contend that plaintiffs, as PFA Associates, had to agree affirmatively to the terms of PFA's Associate Marketing Agreement ("AMA") which includes provisions for mandatory arbitration of disputes, a Georgia choice of law clause, and a consent to venue and jurisdiction in Georgia.

The Court having thoroughly reviewed the briefing, admissible evidence, and other papers filed in support of and in opposition to the motion, having heard oral argument on August 20, 2019, and for the reasons stated herein, **ORDERS** that the motion to compel arbitration is **DENIED** and the motion to transfer venue is likewise **DENIED** for the reasons stated herein.

## II. MOTION TO COMPEL ARBITRATION

### A. Legal Framework

Under the Federal Arbitration Act (the "FAA"), a district court may stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in the district court to compel arbitration. 9 U.S.C. § 4. In ruling on the motion, the Court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Dibetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

Arbitration is a matter of contract and the existence of a contract must be established before arbitration is ordered. *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986); *accord Sanford v. MemberWorks, Inc.,* 483 F.3d 956, 962 (9th Cir. 2007) ("Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration.") (emphasis in original). While the federal policy strongly favoring arbitration requires that doubts concerning the *scope* of arbitrable issues be resolved in favor of arbitration, such policy does not apply to questions of whether a particular party is *bound* by an arbitration agreement, which is a matter of contract law. *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013) (citing cases).

### B. Background

PFA contends that all associates, including plaintiffs Wang and Chen, are required to complete an online application and must consent to the terms of the AMA. More specifically, PFA submits the declaration of Kelly Martin, PFA's office manager, who avers that PFA applicants must scroll through the entire AMA, click a checkbox next to the statement "I accept the terms and conditions," and electronically sign their name at the end of the AMA. (Declaration of Kelly Martin, Dkt. No. 55-1, at ¶¶ 4-6, 15-17 and Exh. A at 8.) By clicking this check box and electronically signing their names, applicants affirmatively consent to the terms and conditions set forth in the AMA. (*Id*. at ¶¶ 15-16.)

Martin avers that Exhibit A to her declaration is a compilation of screenshots of the version of PFA's website that was in use continuously between 2017 and 2019, when plaintiffs herein joined PFA, and thus shows the application process PFA associates were required to complete. (*Id.* ¶¶ 5, 7, 15-17.) The first part of the application process is a series of blank boxes to be filled with the associate's personal and contact information as well as the "upline" referring/recruiting associate's PFA identification number. (*Id.* Exh. A at 1-2.) At the end of this series of blank boxes is a clickable button reading "continue." (*Id.*)

The second part of the application process is the "Premier Financial Alliance, Inc. Associate Marketing Agreement" which includes 14 sections covering the terms of the AMA.[1] Section 2, the portion upon which defendants rely to compel arbitration here, provides:

> 2. Covenants of the Associate
> The Associate agrees not to represent himself as an employee, owner, partner or agent of PFA. The Associate agrees not to present himself to third parties as one who has the authority to make or execute contracts, agreements, covenants or obligations on behalf of PFA. The Associate agrees to be appointed and coded under PFA's contracts with its affiliated insurance companies. The Associate agrees to comply with all local, state, federal and international statutes, laws, ordinances and regulations in conducting his business under this Agreement. The Associate agrees that he will not represent PFA membership as a business opportunity nor will he represent that PFA members will be compensated based on the number of persons they recruit to join PFA. The Associate agrees to be solely responsible for payment of all federal, state and local taxes based on business, sales or income obtained under this agreement. (This includes, but is not limited to, income taxes, payroll taxes, self-employment taxes, unemployment taxes, sales taxes, franchise taxes, intangible taxes and personal property taxes.) The Associate agrees not to institute any legal proceedings against PFA; but, instead, shall submit any and all disputes with PFA, its officers, directors, employees and associates to binding arbitration pursuant to the rules of the American Arbitration Association. The Associate agrees to comply with all policies, procedures, rules, regulations and guidelines of PFA and of all of its affiliated insurance companies with whom the Associate may be appointed under PFA. The Associate agrees not to use any advertising or promotional material other than those provided or approved by PFA or its affiliated insurance companies. The Associate agrees not to share or pay any insurance commissions to PFA recruits before they are licensed.

(*Id* at 4.) Section 13 of the AMA states:

---

[1] The sections are entitled "1. Relationship of the Parties" "2. Covenants of the Associate;" "3. Duties of the Associate;" "4. Authority of the Associate;" "5. Compensation of Associate;" "6. Advances to Associate;" "7. Associate's Vesting Rights;" "8. Associate's Bill of Rights;" "9. Duties of PFA;" "10. Associate For-Cause Grounds for Sanctions;" "11. Termination of Agreement;" "12. Covenants of Associate Upon Termination;" "13. Breach of Agreement;" and "14. Miscellaneous."

3

> 13. Breach of Agreement
>
> Should Associate breach any covenants, duties or other terms and provisions of this Agreement, PFA, in its sole discretion, may elect to file civil litigation in Gwinnett County, Georgia, (or, at PFA's sole option, in Associate's state of domicile), seeking monetary damages and/or injunctive relief. Since damages for violation of this Agreement may be difficult to ascertain, Associate agrees to pay liquidated damages in the amount of $100,000 for a breach hereof or in the amount of the actual damages as may be awarded to PFA, whichever is greater. Associate consents to PFA's choice of law, venue and liquidated damages provisions herein in lieu of binding arbitration.

(*Id*. at 7-8.) Section 14, entitled "Miscellaneous," includes seven sub-paragraphs, including:

> Choice of Law/Forum. Should there be any conflict as to the interpretation, breach or other default events under this agreement, the parties agree that the choice of the law shall be the State of Georgia. All parties consent to jurisdiction and venue in Gwinnett County, Georgia for any disputes that may arise hereunder.

(*Id*. at 8.) Immediately after section 14 appears the phrase "I accept the terms and conditions" next to a check box, as well as a blank box with the text "Enter Name" followed by a clickable button with the text "Continue." (*Id*.)

The third part of the process, according to Martin's declaration, is a new webpage with a set of blank boxes for filling in information to complete a credit card transaction, with a clickable button at the end of the page stating "Pay Now ($125)." (*Id*. at 9.)

**C. Discussion**

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard" in Rule 56 of the Federal Rules of Civil Procedure. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004); *accord Garcia v. Cent. Coast Restaurants, Inc.*, No. 18-CV-02370-RS, 2019 WL 4601538, at *2 (N.D. Cal. Sept. 23, 2019); *see also Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (existence of enforceable arbitration agreement to be determined based upon summary judgment standard); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (courts deciding motions to compel arbitration apply a "standard similar to that applicable for a motion for summary judgment") (internal citations omitted). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir.), *cert. denied,* 138 S. Ct. 203 (2017)

1 (internal citation omitted). Where a party opposes a motion to compel arbitration on the ground that no agreement to arbitrate was made, the court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). "Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.*

Here, there are genuine disputes of material fact as to whether either of the named plaintiffs entered into the agreement at issue. The declarations of plaintiffs Youxiang Eileen Wang and Dalton Chen both state that another PFA associate entered their data for registration purposes and clicked on the "I Agree" button on the registration website on their behalves, such that they never saw the terms of the AMA, including the arbitration provision, when they registered.

Plaintiff Youxiang Eileen Wang declares she was recruited by Bianca Zong and that Zong completed the registration process on Zong's laptop, not Wang. (Declaration of Youxiang Eileen Wang, Dkt. No. 64-3, at ¶¶ 4-5.) Wang states that she did not see the screen and Zong did not describe it to her. (*Id.* ¶ 5.) Zong asked Wang for her personal information, including name, address, and credit card number. (*Id.*) Wang states that she understood Zong would use the information to arrange for her credit card to be charged the $125 registration fee, and that she did not believe there was any agreement or additional terms other than payment of the fee to become a PFA associate. (*Id.* ¶ 6.) Wang declares she never saw the AMA and was not told at that time of any additional terms besides fee payment required for registration with PFA. (*Id.* ¶¶ 6-7.)

With respect to plaintiff Dalton Chen, he declares that he attended a seminar in Brisbane at the invitation of Connie Huang and heard a presentation about PFA. (Declaration of Dalton Wang, Dkt. No. 64-4, ¶ 3.) He returned several weeks later, around May 2017, for a second visit to the Brisbane office with the understanding that he would need to pay $125 to become a PFA associate. (*Id.* ¶¶ 2-4.) Chen states that Huang enrolled him and controlled the enrollment process from her mobile phone (presumably, its internet browser), at one point handing him the phone to enter his credit card information in empty fields or boxes on the webpage, which he input himself. (*Id.* ¶¶ 5,

5

6.) Chen declares that, other than the information for charging his credit card, no other information was displayed on Huang's phone, and he did not click any buttons or otherwise navigate away from the web page displayed. (*Id*. ¶¶ 6, 7.) He states neither Huang nor anyone else who was present when he enrolled told him that enrollment with PFA required agreeing to additional terms, nor did anyone describe to him any terms that displayed on the mobile phone over the course of his enrollment. (*Id*. ¶ 8.)

On reply, defendants offer a variety of arguments as to why the agreement should be enforced to compel both plaintiffs to arbitration, notwithstanding their declarations that they never clicked on the agreements. Defendants argue that: (1) the PFA associates who registered them had actual agency to agree to the AMA on their behalves; (2) plaintiffs subsequently ratified the agreements by working under their terms; (3) plaintiffs had actual notice or were on inquiry notice as to the terms of the AMA once they began recruiting new associates who completed the online registration process; and (4) plaintiffs are estopped from avoiding the arbitration provision since they seek the benefits of the AMA agreement here, including sales commissions.

The Court finds these arguments without merit. Nothing in the record demonstrates that PFA's recruiters were acting as "agents" of plaintiffs in completing the online registration forms, nor that the recruiters acted within the scope of any ostensible authority or notified plaintiffs of the terms of the agreement. Similarly, defendants do not offer evidence to meet the requirements of equitable estoppel, nor to demonstrate that plaintiffs had actual notice of the arbitration agreement or ratified it.[2]

On the record evidence before the Court, there are triable issues of fact as to whether plaintiffs entered into the AMA, including the arbitration provision.[3] Therefore, the motion to

---

[2] The Court further notes that defendants' arguments in reply all implicitly acknowledge that plaintiffs did not complete the forms themselves, and that defendants offered no evidence from the PFA associates who Wang and Chen say recruited them and completed the registration process for them. Those "upline" associates would have had to include their PFA associate number in first part of the online registration process, as described in Martin's declaration. (Martin Decl., Exh. A at 1-2.)

[3] In their supplemental reply, for the first time, defendants offered a one-page declaration from Xue Jun Yuan, a PFA "Regional Field Director," stating that she saw Dalton Chen complete (*cont'd . . .*)

6

1 compel arbitration is **DENIED**.

## II. MOTION IN THE ALTERNATIVE TO TRANSFER

Defendants move, in the alternative, to transfer this action to the Northern District of Georgia, pursuant to 28 U.S.C. section 1404(a). Defendants contend that this action "might have been brought" in the Northern District of Georgia, where PFA is incorporated and headquartered, and plaintiffs, by their acceptance of the AMA, consented to venue and jurisdiction in Georgia. (Martin Decl. ¶ 20 and Exh. A at § 14.) Plaintiffs counter that they cannot be bound by the AMA's terms as to venue for the same reason as they cannot be bound by the arbitration provision. Moreover, they contend the section 1404 factors favor maintaining their choice of venue.

### A. Applicable Authority

Pursuant to 28 U.S.C. section 1404(a), a district court has discretion to transfer an action to another forum. Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . . [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atlantic Marine Const. Co. v. U.S. Dist. Court*, 571 U.S. 49, 59 (2013). Forum selection clauses may be enforced through a motion to transfer under section 1404(a). *Id.*

"In the typical case not involving a forum-selection clause, a district court considering a [section] 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Id*. at 62. Private convenience concerns take into account "relative ease of

---

the application process himself on his own cell phone. (Dkt. No. 76-1, ¶¶ 2, 5.) Plaintiffs objected to this late-filed evidence, as well as to defendants' even later attempt to corroborate the cursory declaration with unfounded attorney testimony (Dkt. No. 78).

Plaintiffs' objection is **SUSTAINED**. Defendants were afforded more than ample opportunity to conduct discovery and gather internal information regarding plaintiffs' alleged execution of the AMAs in connection with this motion. (*See* Court's Order at Dkt. No. 70, granting expedited discovery and additional briefing). The Yuan declaration was signed July 31 and submitted with defendants' supplemental reply on August 2 —well after defendants took Chen's deposition on July 2 and filed their reply brief on July 19, 2019. *See Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (refusing to consider new information because it was "improper[ly]" submitted in a reply brief); *BoomerangIt Inc. v. ID Armor Inc.*, 104 U.S.P.Q.2d 1081, 1085 n.1 (N.D. Cal. 2012) (same); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 n.5 (N.D. Cal. 2005) (refusing to consider a declaration because "Defendants' attempt to introduce new evidence in connection with their reply papers [was] improper"). Moreover, the Yuan declaration only adds to the disputed issues of fact here.

access to sources of proof[,] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses[,] . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 63 n. 6 (internal citation omitted); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (factors to be considered include "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."). Public interest factors to be considered include relative court congestion, local interest in the controversy, and familiarity with the applicable law. *Atlantic Marine,* 571 U.S.

However, "the calculus changes . . . when the parties' contract contains a valid forum selection clause." *Id.* "[A] valid forum selection clause should be given controlling weight in all but the most exceptional cases," and the "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," based upon public interest factors. *Id.* (citation and brackets omitted).

**B.   Discussion**

As a preliminary matter, the forum selection clause carries no weight in the Court's analysis, for several reasons. First, for the same reasons the Court cannot compel arbitration due to material disputes of fact concerning contract formation, the Court likewise cannot find the forum selection provision in the AMA applies to plaintiffs' case. *See Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 868 (2016) (party could not simply invoke a forum selection clause when validity of the larger contract was in doubt). Second, even if the AMA were binding on plaintiffs, the forum selection clause therein is permissive, not mandatory. The AMA provides in section 13 that "PFA . . . may elect to file civil litigation in Gwinnett County, Georgia" in the case of a breach of the agreement, and in section 14 that "[a]ll parties consent to jurisdiction and venue in Gwinnett County, Georgia for any disputes that may arise hereunder." (Martin Decl. Exh. A at 8.) Where a

8

forum selection clause uses only permissive language, it need not be enforced. *Terra Tech Corp. v. Vandevrede*, No. SACV 18-602 JVS (JDEx), 2018 WL 8131761, at *7 (C.D. Cal. Dec. 4, 2018) (*citing Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) and *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). The AMA does not so state. Third, the forum selection clause in the AMA is limited to matters arising under the agreement, including "conflict as to the interpretation, breach or other default events." (Martin Decl. Exh. A at 8.) The Court is not persuaded that the forum selection clause would encompass the tort-like claims alleged here. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract").

Turning to the private convenience conerns, the Court finds that they favor denying the motion to transfer. Plaintiff Chen was recruited at and enrolled as an associate in an office in California and in this district. (Chen Decl. ¶¶ 2-4.) While plaintiff Wang was recruited and enrolled in New Jersey, that fact does not favor a transfer to Georgia, as sought here. Plaintiffs offer evidence that PFA has extensive contacts in California, including that PFA maintains more than 50 offices in California, that half of its associates nationwide are located in California, and that half of the "Living Life" policies sold by PFA associates were sold to California residents during the alleged class period. (Declaration of Daniel C. Girard, Dkt. No. 63-6, Exh. 4 [Martin Depo.] at 49:13:17, 60:9-10, 78:21-23, 101:21-22; 5, 6, 7, 14, 15, 21, 28.) Many of the top-level members of the alleged pyramid scheme are located in California, as defendants concede. (Reply, Dkt. No. 72 at 11:5-6 [Jack Wu, Lan Zhang, and Hermie Bacus all work in California]; Martin Depo. at 60:9-10; 83:19-21; 101:18-22 [Bill Hong, Rex Wu, Marcus Narona in California].) The location of PFA employee witnesses, of which there appear to be few, does not favor a Georgia forum since they can be compelled to testify regardless of the forum. PFA has not identified non-party witnesses located outside California whose testimony is likely to be necessary. The majority of the claims here are brought under California statutes with which this Court likely will be more familiar. PFA has not

9

demonstrated that any other factors—costs of litigation, ease of access to sources of proof, availability of compulsory process as to former employees or associates, etc.—would favor transfer to Georgia. Moreover, plaintiffs' choice of forum is entitled to some deference under the circumstances, even taking into account that such a choice is accorded less weight in the context of a putative nationwide class action.

With respect to the public interest factors, defendants fail to identify any interests or burdens weighing in favor Georgia rather than California. To the contrary, California would have a significant interest in the issues at stake, given that so many of the PFA associates are located here, and sold such a high proportion of the "Living Life" policies to California consumers.

In sum, defendants have failed to persuade the Court that it should exercise its discretion to transfer venue to the Northern District of Georgia, and the motion to transfer is **DENIED**.

### III. CONCLUSION

For the reasons stated above, the Motion to Compel Arbitration, or in the Alternative, to Transfer Venue is **DENIED**.

Defendants have requested that the Court allow discovery or an evidentiary hearing to resolve the dispute here. Both sides have indicated they wish to take additional discovery on the existence of a contract. The statute allows for a summary trial on this issue. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.") Accordingly, the Court sets a case management conference for **Monday, January 13, 2020, at 11:00 a.m.** in Courtroom One of the U.S. District Court in Oakland, California to discuss how the case should proceed. The parties shall meet and confer and file a joint statement by no later than **January 6, 2020**.

This terminates Docket No. 55.

**IT IS SO ORDERED.**

Dated: December 19, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**